## BANKERS NATIONAL BANK v. NELS BRUCE.[1]

October 3, 1930.

No. 27,908.

*Brill & Maslon,* for appellant.
*Olof L. Bruce* and *J. J. Truax,* for respondent.

[1]Reported in 232 N. W. 325.

STONE, J.

In this action on a promissory note plaintiff had a verdict, but defendant prevailed on a set-off and counterclaim. Plaintiff appeals from the order denying its alternative motion for judgment for the face value of the note or a new trial.

The note is for $3,000, executed by defendant to plaintiff March 5, 1924. It evidences a loan, the proceeds of which defendant used in purchasing from plaintiff several promissory notes against farmers near Burlington, North Dakota. These notes had been held by plaintiff as collateral to certain obligations of the American State Bank of Burlington, which has since gone into liquidation. Defendant also held a claim against that bank and by garnishment had made it a charge on the collateral, second to plaintiff's lien. By agreement between plaintiff and defendant, the collateral notes were sold at judicial sale. Defendant purchased them for $3,000, borrowing the money from plaintiff and giving it the note upon which he is now sued.

In his original answer, bearing date January 5, 1927, defendant charged plaintiff with having made a variety of false representations concerning the notes which induced him to purchase them. He alleged that in consequence, and in November, 1924, he had rescinded his purchase and "demanded of plaintiff the return" of the note in suit and the repayment to him of interest which he had paid and "other expenditures in connection with said purchase." That is, defendant first pleaded a rescission because of the alleged fraud of plaintiff.

The defense substituted by the first amended answer, filed at the opening of the trial, was an alleged oral contract by plaintiff obligating it to see that the notes which defendant had purchased for $3,000 would yield him a return of $7,500 at least. Upon that theory the trial proceeded for several days (counsel for plaintiff say seven) when defendant again procured leave to amend his answer. He abandoned his second theory, which also had proved wholly untenable, and then interposed the defense that plaintiff had been guilty of fraud inducing his purchase of the collateral notes by concealing the fact that there had been collected thereon

$1,776.75, which had not been indorsed. That such collections had been made seems to be established, but plaintiff had never received any of the money from the collecting agent and claims that defendant knew the whole situation from the beginning. Defendant denies that, and so arose the principal issue finally submitted to the jury.

Much evidence had been introduced by defendant in support of his first amended answer, the one filed at the beginning of the trial. It indicated that promises of the kind pleaded, that is, that $7,500 or more would certainly be realized from the North Dakota notes, had been made by plaintiff and not kept. The jury could well have concluded that, morally at least, plaintiff was bound thereby; or that it might have made the promises intending to deceive defendant to his damage; that its purpose, in short, was to put over on him a bunch of worthless notes in exchange for his own for $3,000. When it finally became evident that defendant's claim of breach of contract was without foundation, plaintiff moved that all the testimony "relating to an agreement that the plaintiff would collect  *   *   * $7,500 on those collateral notes" be stricken. The motion was denied, and error is now assigned on that ruling. The jury were instructed that the claim by defendant of breach of contract and his counterclaim upon plaintiff's alleged promise that the notes would produce $7,500 was no longer available because of defendant's "subsequent inconsistent written agreement in the note." Upon the matter being called to his attention at the end of the charge, the learned trial judge charged the jury to "disregard all evidence which has been offered either in support of or in opposition to said counterclaim." "It has no bearing," he said, upon the counterclaim for $1,776.75.

Defendant had personal knowledge of the entire transaction from the beginning. Moreover, he had the advice of a competent attorney, retained by him from the outset, who advised him in his original purchase of the collateral. From any standpoint, his repeated and radical shifting of position is difficult of explanation. His first defense, formally brought forward by verified answer but abandoned at the beginning of the trial, was shown by his own testimony to have been wholly without foundation in fact.

The second defense attempted, the one upon which the trial proceeded for several days and through much testimony, was equally untenable. Then came defendant's final shifting of position and his final counterclaim or offset. There was then before the jury a mass of testimony interposed by the defense reflecting directly and seriously upon the good faith of plaintiff and the veracity of its officers and witnesses. Some may have been relevant to the alleged offset upon which defendant finally went to the jury. But at best the relevant was so inextricably interwoven with that which was irrelevant but damaging to plaintiff that we feel plaintiff has been prejudiced.

The last amendment of the answer was made over plaintiff's objection. We do not hold its allowance, standing alone, to have been error. In permitting amendment of pleadings, even during trial, trial courts have a wide discretion. But the issue tendered by the last amended answer was a narrow one when considered with defendant's claim of breach of contract put forward by the first amended answer and to which a large volume of evidence was directed. That evidence was of such character and had such a plain tendency to damage plaintiff with the jury that, the whole procedure considered, prejudicial error is apparent to an extent demanding a new trial. Even after the last amendment of the answer had been allowed, after it was apparent and had been ruled that there was no proof of the contract claimed by defendant, one of his counsel persisted notwithstanding in emphasizing to the jury the idea that there was a contract. He said: ."We tendered our proof yesterday on our contract."

The rules of pleading have not been so far relaxed that a litigant who has made repeated amendments of his pleadings can be permitted the benefit of a verdict which, it is plain, may be based upon evidence offered in support of a cause of action or defense no longer in the case, evidence which in fact never should have been tendered and would not have been received had the answer been in proper shape.

Consequently the order appealed from must be reversed.

So ordered.